UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DIAMOND QUALITY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:22-CV-114-HAB |
| | ) |
| DANA LIGHT AXLE PRODUCTS, LLC, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff sued Defendant for tortious interference with contractual and business relationships after Defendant excluded it from Defendant's property. Defendant moved for summary judgment. (ECF No. 32). Following extensive briefing, this Court certified two questions to the Indiana Supreme Court. (ECF No. 68). The Indiana Supreme Court answered. *See Diamond Quality, Inc. v. Dana Light Axle Products, LLC*, 256 N.E.3d 529 (Ind. 2025). Because the Indiana Supreme Court's answer is an unequivocal adoption of Defendant's position, summary judgment will be granted.

**I.    Factual and Procedural Background**

**A.    *Designated Facts***

This case centers around three subsidiaries of parent company Dana Incorporated: Defendant Dana Light Axle Products, LLC ("Dana Fort Wayne"), Dana AMSA, and Dana ETRAC. The latter two are based in Mexico, and supply parts to Dana Fort Wayne. Dana Fort Wayne then performs precision machining and quality control before shipping the machined parts to other Dana facilities.

Plaintiff is an industrial inspection and sorting company. Since 2014, Dana Fort Wayne and its related companies have been among Plaintiff's largest clients, with Plaintiff charging more than $1,500,000.00 for work performed at the Dana Fort Wayne facility.

While Plaintiff performed various jobs for the Dana companies, this case primarily deals with sorting. Basically, Plaintiff would go through non-conforming machined parts and determine whether the nonconformity was the fault of the suppliers—Dana AMSA and ETRAC—or Dana Fort Wayne. Whichever entity was found to be at fault was then responsible for associated costs. Plaintiff was contracted to perform this work by the suppliers and viewed itself as their "eyes and ears."

This arrangement appears to have worked well until mid-2019. It was then that Michelle Evans ("Evans"), Dana Fort Wayne's Quality Manager, made the decision to cut back the use of third-party sorting companies like Plaintiff. Dana Fort Wayne claims that the decision was part of a larger cost-cutting strategy imposed by Dana Incorporated. Plaintiff disputes this explanation, and instead asserts that the decision was made unilaterally by Dana Fort Wayne to push costs for nonconforming parts onto the suppliers.

Whatever the cause, in March and June 2019 Dana Fort Wayne emailed Dana AMSA instructing Dana AMSA to stop sorting activity generally, and the use of Plaintiff specifically. Plaintiff was then informed by Evans in June 2019 that Plaintiff would no longer be permitted to conduct sorting activities at Dana Fort Wayne.

Fast forward to February 2020. Dana Fort Wayne received a shipment of parts from Dana ETRAC that contained several non-conforming parts. Dana Fort Wayne determined that sorting was necessary and began sorting the parts using a different third-party sorting company. Dana ETRAC confirmed the need for sorting via email, copying Plaintiff's owner, Laura Johnson

("Johnson"), and designating Plaintiff as the company to conduct the sorting. Johnson responded, "Yes we will support the inspection. Please call me directly if you have any questions or concerns." Despite Dana ETRAC designating Plaintiff, and despite Johnson's email acceptance, Dana Fort Wayne refused to allow Plaintiff to perform the sort, instead continuing with its selected third-party sorting company.

The next month, Dana AMSA asked Plaintiff to conduct sorting at Dana Fort Wayne. Johnson and another of Plaintiff's employees went to the Dana Fort Wayne facility to conduct the sort. She was denied entry, however, because of COVID-19 protocols. Johnson, accompanied by a security guard, proceeded to Evans' office to demand an explanation for why Plaintiff was being denied access for the sort. Evans explained the COVID restrictions and further advised Johnson that Dana Fort Wayne had hired a different company to perform the sort. Later, Evans sent an email to other senior management officials at Dana Fort Wayne with directions that Plaintiff was not permitted at the Dana Fort Wayne facility "for any reason."

Based on these facts, Plaintiff alleges that Dana Fort Wayne tortiously interfered with Plaintiff's contractual and business relationships. For the contracts, Plaintiff identifies the requests in February and March 2020 by Dana ETRAC and AMSA, respectively, to conduct sorts at the Dana Fort Wayne facility. Plaintiff also points to what it sees as Dana Fort Wayne's ongoing efforts to discourage the use of Plaintiff's services as the basis for its business relationship claim.

**B.**   *Indiana Supreme Court's Opinion*

After considering these facts, the Indiana Supreme Court decided to re-frame this Court's certified questions into one: "Does a property owner act without justification (or engage in wrongful or illegal conduct), for purposes of a claim for tortious interference with a contractual or business relationship, when the property owner bars a plaintiff from accessing the owner's

property?" *Diamond Quality*, 256 N.E.3d at 532. It answered the question, "no," and announced, "a per se rule that, absent a contractual or statutory duty, a property owner is always justified in excluding another from the owner's premises." *Id*.

Under this per se rule, the Indiana Supreme Court found that Defendant was "correct" in arguing that it was "entitled" to deny Plaintiff entry onto its premises. *Id*. at 533. The Indiana Supreme Court relied on "fundamental property-law principles," specifically the "absolute right to exclude others" from one's property. *Id*. at 534.

> Of course, a property owner may permit anyone it wishes to enter its property. Such permission may be conferred by contract between owner and entrant. And civil-rights laws may limit a commercial enterprise's right to exclude, at least insofar as the enterprise has opened its property to the public yet seeks to exclude some on the basis of a protected status. But absent a contractual or statutory duty, a landowner is entitled to deny entry onto its premises for any reason or no reason at all. Since exercising the right to exclude is not "unjustified", "wrongful", or illegal, this conduct cannot support a claim for tortious interference under Indiana law.

*Id*.

## II.    Legal Discussion

### A.    *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide,

based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.    *The Indiana Supreme Court's Decision Mandates the Entry of Summary Judgment***

By announcing its per se rule, the Court decided this claim. Both tortious interference with contract and business relations require a lack of justification for the defendant's actions as an element of the claims. *See Coleman v. Vukovich*, 825 N.E.2d 397, 403 (Ind. Ct. App. 2005); *McCollough v. Noblesville Schools*, 63 N.E.3d 334, 344 (Ind. Ct. App. 2016). Plaintiff has consistently identified its exclusion from Defendant's premises as the unjustified act. (ECF No. 44 at 11, 22). But the Indiana Supreme Court has determined that Defendant was "correct" when it claimed it was entitled, under property law principles, to exclude Plaintiff. This Court is bound by that determination. *Williams, McCarthy, Kinley, Rudy & Picha v. Nw. Nat. Ins. Grp.*, 750 F.2d 619, 624 (7th Cir. 1984) (state supreme court is "final authority" on issues of state law in diversity cases). There is nothing else for this Court to decide.

The only exceptions identified in the Indiana Supreme Court's order are where a contractual or statutory right to enter exists. Plaintiff has never argued that it has a statutory right

to enter. And the Indiana Supreme Court declared that the contractual right must be "between owner and entrant." *Diamond Quality*, 256 N.E.3d at 534. That contract does not exist here. There is no way out from under the Indiana Supreme Court's decision for Plaintiff. Summary judgment must be entered.

**III.     Conclusion**

For these reasons, Defendants' motion for summary judgment (ECF No. 32) is GRANTED. The clerk is DIRECTED to enter judgment for Defendant and against Plaintiff.

SO ORDERED on June 11, 2025.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT
